**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**HEINZ KETTLER GMBH & CO., KG and
KETTLER INTERNATIONAL, INC.,**

      **Plaintiffs**

      **v.**                          **Civil Action No. 2:09cv500-RGD-FBS**

**THE LITTLE TIKES COMPANY, INC.,**

**and**

**MGA ENTERTAINMENT, INC.,**

      **Defendants.**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' Rule 12(b)(6) MOTION TO DISMISS**

Plaintiffs, Heinz Kettler GmbH & Co., KG ("HK") and Kettler International, Inc. ("KETTLER") (collectively, "the Plaintiffs"), by counsel, hereby submit this Memorandum in Opposition to the Motion to Dismiss for Failure to State a Claim on Which Relief Can be Granted filed by the Defendants, The Little Tikes Company, Inc. ("Little Tikes") and MGA Entertainment, Inc. ("MGA") (collectively, "the Defendants").

## I.    INTRODUCTION

The Defendants in this case have sandbagged the Plaintiffs by filing the Motion to Dismiss. Little Tikes first lured the Plaintiffs in by making false representations designed to induce them to agree to a limited dismissal with prejudice of Little Tikes, and now turn on them – misrepresenting and attempting to expand the scope of the parties' consent dismissal in order to use it against the Plaintiffs to claim *res judicata* and imply the existence of a license for Kettler's patented technology. As the facts amply demonstrate, the agreement between the parties was narrow – Kettler agreed to dismiss Little Tikes with prejudice with respect to the

Ofrat Model 129H tricycle only, based on Little Tikes' representations that it was only the trademark licensor and did not make, sell, offer for sale, or import Ofrat-made products. As Plaintiffs have now discovered, Little Tikes' representations were false. Little Tikes does, in fact, import and sell Ofrat-made tricycles and was doing so at the time that it made the foregoing representations. This Court should not allow Defendants to engage in this type of gamesmanship; they should not be permitted to benefit from their deliberate misrepresentations and their attempt to hide the parties' true agreement from this Court.

## II.     PROCEDURAL BACKGROUND

### A.     The Rand/Little Tikes Litigation

On July 1, 2008, Plaintiffs filed a complaint ("Rand Complaint") in this Court against Little Tikes and Rand International, LLC ("Rand"). The Rand Complaint alleged that Rand imported and sold certain tricycles manufactured by Ofrat, including the Ofrat Model No. 129H, known as the "Steer and Grow Tike" that infringed KETTLER's U.S. Patent No. 7,156,408 (the "408 Patent") and U.S. Patent No. 6,799,772 (the "772 Patent"). (Rand Compl. ¶¶ 14-15.) A copy of the Complaint is attached to the Defendants' Motion to Dismiss as Exhibit A.[1]

During the discovery process and settlement discussions between the parties in the Rand case, counsel for Little Tikes served answers to interrogatories and represented to counsel for the Plaintiffs that Little Tikes "does not sell, make or use, or import the products. They merely license the use of the trademark to Rand, who purchases the products from Ofrat in Israel." (*See* Declaration of John C. Lynch, Esquire ("Declaration"), attached hereto as Exhibit 1 (Email from Edward A. Pennington to Kyle E. McNew, dated February 17, 2009, attached to the Declaration as Exhibit 1A.)) On February 19, 2009, counsel for Little Tikes again represented that "Little Tikes does not make or sell or use or import anything, and they only license the name." (Email

---

[1] Specifically, the Plaintiffs alleged in the Rand Complaint that the tricycles manufactured by Ofrat and imported by Rand copied the limited turning system patented by KETTLER. (Rand Compl. ¶ 14.)

from Pennington to McNew, dated February 19, 2009, attached to the Declaration as <u>Exhibit 1B</u>.)  Again, on April 9, 2009, counsel for Little Tikes repeated that Little Tikes "has never sold, offered to sell, imported, made, etc. any of the accused devices . . . *On my assurances to you*, . . . Little Tikes doesn't seem to be implicated in any way on the Ofrat-made products; can you make this settlement with prejudice with respect to Little Tikes" and "Little Tikes doesn't do anything. We have a motion for summary judgment prepared that addresses their lack of infringement, based on the sole act of being a trademark licensor."  (Email chain between Pennington and McNew dated April 9, 2009, attached to the Declaration as <u>Exhibit 1C</u> (emphasis added)).[2] Quite clearly, these statements were made to induce the Plaintiffs to dismiss Little Tikes from the suit with prejudice.

Based on Little Tikes' representations that it was only the trademark licensor with respect to the Ofrat-made products, that it did not sell, manufacture or distribute any tricycles, and on an agreement from Pennington to accept service on behalf of Ofrat in the future in the event that KETTLER decided to re-file the suit, the Plaintiffs agreed to dismiss Little Tikes with prejudice as to the Ofrat Model No. 129H, also known as the "Steer and Grow Trike."  (*See* <u>Exhibit 1B</u>.) Specifically, the parties agreed that the Plaintiffs would dismiss their claims against Rand without prejudice and dismiss their claims against Little Tikes with prejudice "only as to those tricycles currently manufactured by Ofrat, imported by Rand, and for which Little Tikes licenses its trademark for branding purposes."  (Email from Sid Pandit to McNew dated April 14, 2009, attached to the Declaration as <u>Exhibit 1E</u>.)  Defendants agreed to dismiss their counterclaims, alleging patent invalidity, without prejudice.  On April 15, 2009, counsel for the Plaintiffs

---

[2] Little Tikes also represented in Answers to Interrogatories, on February 19, 2009, that it "does not sell, manufacture or distribute *any* tricycles."  (*See* Answers to Interrogatories No. 9 and No. 10, attached hereto as <u>Exhibit 2</u> (emphasis added)).  Although counsel for Defendants represented that a signed verification for these answers would be provided, Plaintiffs have no record of ever receiving one, instead relying on the representations of counsel for Plaintiffs.  (*See* Letter from Sid Pandit to John Lynch, dated February 19, 2009, attached to the Declaration as <u>Exhibit 1D</u>.)  As discussed *infra*, contrary to Answers to Interrogatories and its representations, Little Tikes and MGA were *importing* and *selling* the Little Tikes Model 615221 at the time this representation was made.

emailed a letter to counsel for Little Tikes and Rand memorializing the parties' agreement and attaching a proposed consent order ("Consent Order").  (Email from McNew to Pennington and Pandit, dated April 15, 2009, attached to the Declaration as <u>Exhibit 1F</u>.)   In the letter, Little Tikes agreed that it would not assert the defenses of laches or estoppel in the event that the Plaintiffs re-filed a suit against them.  *Id.*  Ultimately, the parties modified the Consent Order to dismiss Little Tikes with prejudice only "as to the Ofrat Model 129H" tricycle.  (*See* Consent Order attached to the Defendants' Memorandum in Support of Motion to Dismiss as Exhibits B and C).[3]  This Court entered the Consent Order on June 9, 2009.

Thus, the facts demonstrate that the Plaintiffs dismissed Little Tikes with prejudice, with respect to only the Ofrat Model 129H tricycle, because Little Tikes represented that it was only the trademark licensor and did not make, import or sell any Ofrat-made tricycles, including the Ofrat Model 129H tricycle.  The Plaintiffs dismissed Rand without prejudice because Rand was the party actually importing the infringing tricycle.  Similarly, Little Tikes and Rand dismissed the counterclaims without prejudice because the issue of patent infringement and validity was never reached.   Little Tikes and Rand retained the right to pursue their claims of noninfringement.  The agreement between the parties reflects a concession by the Plaintiffs only that it would not pursue Little Tikes, *as a trademark licensor*, for patent infringement with respect to the Ofrat Model 129H tricycle.  The correspondence between the parties makes it clear that the parties did not intend to foreclose future litigation involving Little Tikes *as a manufacturer, importer, seller, or distributor* of tricycles that infringe KETTLER's patents, whether or not those tricycles were only cosmetically different from the Ofrat Model 129H tricycle.

---

[3] Although the docket entry on PACER references a "Motion to Dismiss," contrary to Defendants' representations, the parties did not draft a file a "Joint Motion to Dismiss."  They simply submitted the consent order that ultimately was entered by the Court.  See Exhibits B and C to the Defendants' Motion to Dismiss.  Thus, this Court did not "grant" any motion; it simply signed and entered the consent order.

## B.    The Current Litigation

After it had dismissed the Rand Complaint, KETTLER discovered that Little Tikes was, contrary to its answers to interrogatories in the Rand case, manufacturing, importing and selling an infringing tricycle.   Accordingly, on October 8, 2009, the Plaintiffs filed this suit against Little Tikes and its parent company, MGA.   The Complaint in this case alleges that Little Tikes copied the vehicle steering head, limited turn system and/or turning lock system patented by KETTLER and used it in a number of tricycles, including Little Tikes Product No 615221, known as the "3-in-1 Smart Trike."   (Compl. ¶ 14.)[4]   The Complaint alleges further that MGA manufactures, imports and sells the infringing tricycles into the United States as a distributor of Little Tikes tricycles.   (Compl. ¶ 15.)   The Complaint asserts that the tricycles manufactured, imported and sold by MGA infringe the '408 Patent and the '772 Patent, as well as two patents not at issue in the Rand Complaint:   U.S. Patent No. 6,378,884 (the "'884 Patent") and U.S. Patent No. 7,487,988 (the "'988 Patent").   (Compl. ¶16).

In response to the Complaint, the Plaintiffs filed their Motion to Dismiss, asserting that the Complaint is barred by the doctrines of *res judicata* and implied license. As a result of the allegations and concessions made its Memorandum in Support of its Motion to Dismiss, KETTLER discovered that Little Tikes had deceived it.   In contrast to the representations made during the Rand case, Little Tikes now concedes that it is, and apparently was during the prior suit, manufacturing, importing and selling an infringing Ofrat-made tricycle.   (Mem. Supp. Mot. to Dismiss, at 7 ("Little Tikes and MGA relied on Plaintiff's implied license by *continuing* to manufacture products which employ the exact same steer-limiting technology: namely the Ofrat Model No. 1260100.") (emphasis added)).[5]

---

[4]  Indeed, the Complaint doesn't reference any Ofrat Model Number because KETTLER was unaware that the specifically accused product, Little Tikes Product No. 615221, also has an Ofrat Model Number: 1260100.

[5]  Upon receiving the Defendants' Memorandum in Support of Motion to Dismiss, KETTLER learned for the first time that the Little Tikes Product No 615221, known as the "3-in-1 Smart Trike," has an Ofrat product number.

Indeed, the admissions now made by Little Tikes and the facts recently discovered by Plaintiffs demonstrate that the representations made by Little Tikes to induce the dismissal of the Rand Complaint with prejudice were, at best, misleading. Beginning in February 2009, Little Tikes represented that it "does not sell, manufacture of distribute any tricycles." (*See* <u>Exhibit 2</u>, Answers to Interrogatories 9 and 10, at 4-5.) In April of 2009, Little Tikes represented that Little Tikes "has never sold, offered to sell, imported, made, etc. any of the accused devices . . . *On my assurances to you*, . . . Little Tikes doesn't seem to be implicated in any way on the Ofrat-made products." (Email chain between Pennington and McNew dated April 9, 2009, attached to the Declaration as <u>Exhibit 1C</u> (emphasis added)). In contrast, Little Tikes now asserts that it "relied on Plaintiffs' implied license by *continuing to manufacture* products which employ the exact same steer-limiting technology: namely, the Ofrat Model No. 1260100." (Mem. Supp. Mot. to Dismiss, at 7 (emphasis added)). Further investigation has revealed that Little Tikes was selling the new Ofrat tricycle early in 2009. (*See* Customer Review dated February 20, 2009 of Little Tikes 3 in 1 Smart Tricycle Little Tikes a copy of which is attached to the Declaration as <u>Exhibit 1G</u>.) It is now apparent that, at the time Little Tikes represented that it was not manufacturing, importing or selling any Ofrat-made products and that it was only a trademark licensor, either it, or its parent company, was in fact selling an Ofrat-made tricycle that infringed KETTLER's patents. These representations were made to induce the Plaintiffs to dismiss Little Tikes with prejudice from the Rand case.[6] Plaintiffs are the victims of a bait and switch scheme perpetrated by Little Tikes.

The facts in this case demonstrate that the parties entered into settlement discussions and, ultimately, into a consent judgment manifesting their intent that the Rand Complaint be

---

[6] Contemporaneous with the filing of this Memorandum in Opposition, Plaintiffs are filing a Rule 60(b) Motion to Set Aside the Consent Order entered in this case due to misrepresentations made by Little Tikes and evidence newly discovered by the Plaintiffs that indicates that Plaintiffs were fraudulently induced to dismiss Little Tikes with prejudice.

dismissed against Little Tikes only with respect to any claims against Little Tikes as a trademark licensor of the specific Ofrat Model 129H tricycle.  Moreover, the Consent Order must be read as whole.   Accepting Defendants arguments would strip all meaning from the first and third paragraphs of the Consent Order.  There would be no meaning to the first paragraph – dismissing Rand without prejudice – because, applying Defendants' theory, Plaintiffs would be barred from suing Rand again on the '408 Patent and the '722 Patent.  Rand is in privity with Little Tikes and, according to Defendants' theory, *res judicata* bars any subsequent suit for infringement with respect the Ofrat tricycle.  This cannot be the intended and proper result of the Consent Order because it renders meaningless the agreement to dismiss Rand without prejudice.  Similarly, with respect to the third paragraph – dismissing Rand's and Little Tikes' counterclaims of non-infringement – Defendants' interpretation of the Consent Order would mean that they retained the right to argue non-infringement/invalidity of the '408 Patent and the '722 Patent in a future case even though they have obtained an implied license to practice those patents and Plaintiffs allegedly are barred by *res judicata* from suing Little Tikes for infringement.  Such a result is patently absurd and could not have been intended.

Instead, it is clear that the parties left open for future litigation any claims against Little Tikes based on Little Tikes' manufacturing, importing or selling any other tricycle infringing the '408 Patent and the '772 Patent, whether or not the differences were merely cosmetic.  The parties also left open for future litigation Little Tikes' defenses of invalidity of the patents and noninfringement, and the possibility that Plaintiffs would sue Rand again for infringement based on its importation of Ofrat-made tricycles, including the Ofrat Model 129H. Under these circumstances, Little Tikes cannot assert the bar of *res judicata* against the Plaintiffs.  Moreover, it is simply a patent falsehood that the Plaintiffs, by agreeing to dismiss Little Tikes as a trademark licensor, in any way "expressly granted authorization" to the Defendants to

manufacture, import, sell or distribute an infringing tricycle. To the contrary, Little Tikes represented that it was not manufacturing, importing or selling any of the infringing products. If this was, in fact, the case what use could Little Tikes have for a license to manufacture, import and sell the tricycles? Little Tikes cannot take the position first that it is only a trademark licensor, in order to procure its dismissal with prejudice, only to turn around later and claim that this dismissal somehow authorized it to continue to do something it contended it was never doing in the first place.

## II.     ARGUMENT

### A.     Standard of Review

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is required to presume that the plaintiff's factual allegations are true, and it must view them in the light most favorable to the plaintiff. *Ambrose v. Blue Cross & Blue Shield of Virginia*, 891 F. Supp. 1153, 1157 (E.D. Va. 1995); s*ee Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (well-pleaded allegations of complaint taken as true, and facts and inferences construed in light most favorable to plaintiff). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (May 18, 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (a claim must have "enough facts to state a claim to relief that is plausible on its face") (citing *Twombly, supra*). It bears emphasis that a Rule 12(b)(6) motion's function is to test only the sufficiency of the allegations.

Consideration of materials outside the pleadings can lead to the conversion of a motion to dismiss into a motion for summary judgment, *e.g.*, *Bosiger v. US Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007), which would be particularly inappropriate at this point where no discovery has occurred and the parties have not served initial disclosures. *E.g.*, *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991) ("Summary judgment may only be entered after 'adequate time for discovery.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *cert. denied*, 502 U.S. 1095 (1992)).

In this case, the Plaintiffs claims are not barred by *res judicata* because the settlement and Consent Order entered into between the parties clearly evince the parties' intent to settle only the Plaintiffs' claims against Little Tikes as the trademark licensor with respect to the Ofrat Model No. 129H tricycle, and leave open any claims against Little Tikes related to its manufacture, importation or sale of other infringing tricycles. Moreover, the facts in this case simply do not support a finding of an implied license authorizing the Plaintiffs to make, import or sell tricycles infringing the '772 and '408 Patents. Without a license, Defendants cannot rely on legal estoppel to permit them to infringe the '988 Patent and the '884 Patent. There remain substantial unresolved issues of fact concerning the intent of the parties when entering into the settlement and Consent Order, whether MGA is in privity with Little Tikes, and whether the statements and conduct of the parties leading to entry of the Consent Order justify a finding of implied license.[7] All of these are issues that cannot be resolved solely on the basis of the allegations in the

---

[7] *See* Rule 56(f) Affidavit of John Lynch, attached hereto as <u>Exhibit 3</u>. Specifically, Plaintiffs contend that material issues of fact exist concerning, at very least, the following: (1) the intent of the parties in fashioning the terms of the Consent Order, the correspondence exchanged between the parties leading up to the entry of the Consent Order, and the circumstances surrounding the agreement to the wording of the Consent Order; (2) the relationship between MGA and Little Tikes including whether MGA controlled the litigation in the first action, whether MGA is a successor-in-interest to Little Tikes, whether MGA's interests were identical to, or adequately represented by, Little Tikes in the first action, the timing of the creation of the alleged parent-subsidiary relationship between MGA and Little Tikes, and the precise nature of this alleged parent-subsidiary relationship; (3) what statements and conducts Defendants rely on in support of their contention that an implied license exists; and (4) whether there are functional or merely colorable difference between the Ofrat Model No. 129H tricycle and the Little Tikes Model 615221 tricycle.

Complaint.

**B.    Plaintiffs are Not Barred by Res Judicata from Bringing the Current Action**

Defendants assert that Plaintiffs are barred from bringing this action claiming that the Ofrat Model No. 1260100/Little Tikes Model 615221, known as the "3-in-1 Smart Trike," infringes the '408 Patent and the '722 Patent.[8]  The requirements of *res judicata*, also known as claim preclusion, are: (a) a final judgment on the merits rendered by a court of competent jurisdiction; (b) the parties are identical, or in privity, in the two actions; and (c) claims in the second matter are based upon the same cause of action involved in the earlier proceeding.  *First Union Commercial. Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enters.)*, 81 F.3d 1310, 1315 (4th Cir. 1996); *Nystrom v. Trex Co.*, 580 F.3d 1281, 1284-85 (Fed. Cir. 2009). In this case, material questions of fact remain concerning whether the Consent Order will remain a final judgment on the merits and whether MGA was in privity with Little Tikes for purposes of the prior litigation.  Moreover, the claims asserted in the Complaint are not based on the same cause of action alleged in the Rand Complaint.  The facts surrounding the settlement of the prior litigation demonstrate that the parties agreed to settle and resolve only those claims related to Little Tikes' role as a trademark licensor on the Ofrat Model No. 129H tricycle, thereby leaving open the possibility of future litigation with respect to any other infringing tricycle that Little Tikes makes, imports or sells.  Accordingly, the elements necessary to apply the doctrine of *res judicata* are not present in this case and the Plaintiffs are not barred from bringing their claims.

**1.    The Consent Order was not a final judgment on the merits.**

As noted above, the Plaintiffs have filed a motion, pursuant to Rule 60(b), to vacate the Consent Order and reopen the Rand case, based on the misrepresentations made by Little Tikes

---

[8] Defendants apparently concede that *res judicata* does not bar Plaintiffs' claims on the '988 Patent and the '884 Patent, instead asserting that the doctrine of implied license applies to prevent litigation of Plaintiffs' claims that Little Tikes and MGA have infringed those patents. *See Kearns v. General Motors Corp.*, 94 F.3d 1553, 1557 (Fed. Cir. 1996) (Rule 41(b) dismissal did not impose the bar of *res judicata* upon patents not included in the suit and not part of the judgment).

and newly discovered evidence indicating that, contrary to Little Tikes' assurances, it was in fact making, importing and selling an Ofrat-made tricycle that infringed the '408 Patent and the '722 Patent at the time that it induced the Plaintiffs to dismiss it with prejudice from the Rand case. Obviously, if the Court grants the Plaintiffs' motion to set aside the Consent Order and reopens the Rand case, there will be no final judgment on the merits sufficient to invoke the doctrine of *res judicata*.

### 2.   MGA is not in privity with Little Tikes.

MGA was not a party to the Rand case. In the Rand Complaint, the Plaintiffs alleged that Rand was the distributor or seller of the infringing products. On information and belief, during the time frame encompassed by the facts alleged in the Rand Complaint, Little Tikes was owned by Newell Rubbermaid. The contract between Rand and Little Tikes, pursuant to which Rand licensed the Little Tikes name, predated the purchase of Little Tikes by MGA. (*See* photograph of product box, attached to the Declaration as Exhibit 1H, showing that Little Tikes was a division of Newell Rubbermaid). Moreover, the interests of Little Tikes in the Rand case and MGA in this case are different. In the Rand case, Little Tikes was simply the trademark licensor and not the importer or distributor of the infringing tricycle. In contrast, in this case MGA and Little Tikes are the manufacturers, importers and sellers of the infringing tricycle(s).

There are three generally recognized categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a non-party who controls the original action, (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action. *Martin v. American Bancorp. Retirement Plan*, 407 F.3d 643, 651 (4th Cir. 2005). It is unclear which of these categories the Defendants rely on. They state only that MGA is in privity with

Little Tikes because Little Tikes is a subsidiary of MGA. (Mem. Supp. Mot. to Dismiss, at 5.)[9] However, the mere fact that Little Tikes is a subsidiary of MGA does not automatically mean that the parties are in privity. *See International Tel. & Tel. Corp. v. General Tel. & Elecs. Corp.*, 380 F. Supp. 976, 983 (M.D.N.C. 1974) (not every action against a parent corporation will bind a subsidiary).

Presumably, the Defendants rely either on category number one (non-party controlled the original action) or on category number three (non-party's interests were adequately represented in the original action). At this juncture, however, the Court lacks sufficient factual information to enable it to make a determination whether MGA controlled the litigation in the Rand case or whether its interests were identical to, or adequately represented by, Little Tikes in the Rand case. *See id*, at 983 (addressing the specific facts showing control of the parent over the subsidiaries and interest of the subsidiaries in the prior litigation); *Whitehead v. Viacom*, 233 F. Supp.2d 715, 721-23 (D. Md. 2002) (assessing whether parent participated in the litigation and whether opponent had knowledge of the non-party parent's participation). In this case, the Court has no facts before it to demonstrate the control that MGA has over Little Tikes, whether MGA participated in the Rand case, whether the interests of the parties were identical, or whether the Plaintiffs had any knowledge of the participation of MGA in the Rand case. Accordingly, this Court cannot determine, without factual development, whether MGA is in privity with Little Tikes for purposes of a *res judicata* analysis. The decision on this issue cannot be made in the context of a motion to dismiss for failure to state a claim.

---

[9] The statement is itself nothing more than unsupported hearsay. Interestingly, Little Tikes filed its financial interest disclosure under seal in the Rand case, stating "[t]his motion [to seal] is based on the ground that [Little Tikes] asserts its corporate structure and financial information is strictly confidential."

**3.      The claims in this case are not based on same cause of action involved in the earlier Rand case**

In the Rand case, the parties did not litigate any of the issues on the merits.   To the contrary, the parties reached an agreement to dismiss the claims against Rand without prejudice and for Little Tikes and Rand to dismiss its counterclaims, alleging invalidity of the patents and noninfringement, without prejudice.   With respect to the claims against Little Tikes, counsel for Little Tikes assured counsel for the Plaintiffs that Little Tikes was nothing more than a trademark licensor with respect to the Ofrat-made tricycles at issue in that case and did not sell, manufacture or distribute *any* tricycles.   Specifically, counsel for Little Tikes repeatedly stated that Little Tikes "does not make or sell or use or import anything, and they only license the name."  (Exhibit 1B.)   Based on these representations, which matched the allegations contained in the Rand Complaint that Little Tikes was the trademark licensor, the parties agreed that the Plaintiffs would dismiss their claims against Rand without prejudice and dismiss their claims against Little Tikes with prejudice "only as to those tricycles currently manufactured by Ofrat, imported by Rand, and for which Little Tikes licenses its trademark for branding purposes." (Exhibit 1E.)  This agreement later was amended to include only the specific Ofrat Model No. 129H tricycle.  (Consent Order.)

Subsequently, the Plaintiffs brought this suit, alleging that Little Tikes and MGA are manufacturing, importing and selling certain tricycles, including the Ofrat Model No. 1260100/Little Tikes Model 615221.  The claims asserted in the Complaint are that MGA and Little Tikes are actually *manufacturing, importing and selling* the infringing tricycle.   The tricycle is alleged to infringe not only the '408 Patent and the '722 Patent, but also the '988 Patent and the '884 Patent.  The Ofrat Model No. 1260100/Little Tikes Model 615221 is not a tricycle manufactured, imported or sold by Rand, nor is it the Ofrat Model No. 129H tricycle.

Thus even if the MGA and Little Tikes are in privity, the claims asserted against MGA in this case are not the same as those asserted against Little Tikes in the Rand case.

a. **The cause of action in the this case is based on a different set of operative facts**

Two causes of action are the same if the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment. *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990). Where the same series of connected transactions is involved and the same operative facts are at issue, the third *res judicata* factor is made out. *Id.* In this case at bar, the cause of action asserted against Little Tikes in the Rand case is not based on the same facts asserted against MGA in the Complaint. In the Rand Complaint, the Plaintiffs alleged that Rand was the party importing and selling the infringing tricycles and Little Tikes was the trademark licensor. Thus, the claim against Little Tikes was based on the factual allegation that it was a trademark licensor. This is borne out by the fact that the Plaintiffs agreed to settle the case against Little Tikes based on answers to interrogatories and representations from counsel for Little Tikes that, in fact, Little Tikes does not sell, manufacture or distribute any tricycles and, specifically, had no involvement as an importer or seller of the Ofrat-made tricycles. Relying on these operative facts, KETTLER decided not to pursue its claims against Little Tikes based on a trademark licensor theory.

In contrast, in the Complaint, Plaintiffs allege that MGA is manufacturing, importing and selling the infringing tricycles. (Compl. ¶ 4, 15-16.) In fact, MGA and Little Tikes admit that they are manufacturing and selling the Ofrat Model No. 1260100/Little Tikes Model 615221 tricycle. (Mem. Supp. Mot. to Dismiss, at 7.) These operative facts are different from those asserted against Little Tikes in the Rand Complaint and, most importantly, different from the facts represented by Little Tikes and on which the Plaintiffs based their dismissal of Little Tikes in the Rand case. *See, e.g.*, *Kronish Lieb Weiner & Hellman, LLP v. Fort*, 197 Fed. Appx. 261,

266, 2006 U.S. App. LEXIS 22485 (4th Cir. 2006) (it cannot be said that the Consent Order and malpractice action involve the same operative facts when the Court had no need to consider any facts pertaining to the nature, quality, or extent of Kronish's services). MGA was not involved in any of the factual allegations asserted in the Rand Complaint. Indeed, on information and belief, MGA did not own Little Tikes at the time of the facts alleged in the Rand Complaint and was not involved with the importation or sale of the tricycles involved in that case. Some time after the Plaintiffs filed the Rand Complaint, MGA and Little Tikes began manufacturing and importing the new Ofrat tricycle. In sum, the cause of action alleged in the Rand Complaint against Little Tikes was based on Little Tikes role as a trademark licensor. In contrast, the allegations in the Complaint allege that MGA is the importer and seller of the infringing tricycle.

*Nystrom v. Trex Co., Inc.*, 530 F.2d 1281 (2009), relied on by the Defendants, is not applicable in the circumstances involved here. In *Nystrom*, in the case brought in the district court, Nystrom conceded that he lacked sufficient information to prove infringement and the district court granted a motion for summary judgment finding noninfringement. *Id.* at 1284. Thus, in *Nystrom*, there was a litigated finding of non-infringement. Nystrom later sought to sue Trex based on a new generation of products introduced to the market by Trex. Overruling the district court's denial of summary judgment, the Fourth Circuit held that there were nothing more than "colorable changes" between the first product and the second product. *Id.* at 1286. Accordingly, the doctrine of *res judicata* barred Nystrom's claims.

Based on *Nystrom*, Defendants spend considerable effort attempting to demonstrate that the tricycle involved in this case is only colorably different from the Ofrat Model No. 129H tricycle involve in the Rand case. However, a comparison of the mechanisms in the two tricycles

is irrelevant.[10]  In this case, there has been no litigated finding of noninfringement.  Moreover, the entry of the Consent Order does not constitute an admission of noninfringement.  The facts are clear that the parties agreed to the dismissal of Little Tikes with prejudice based only on the representations that Little Tikes does not manufacture, distribute or sell tricycles and on the grounds that no cause of action for patent infringement can be maintained against a party who is only a trademark licensor.  That is the only concession that the Plaintiffs made by entry of the Consent Order and it does not bar a later cause of action against MGA based on different factual allegations – allegations that the Defendants actually import and sell infringing tricycles.

### b.    The parties agreed to split the claim

As the Fourth Circuit has held, "[w]hen a consent judgment entered upon settlement by the parties of an earlier suit is invoked by a defendant as preclusive of a later action, the preclusive effect of the earlier judgment is determined by the intent of the parties." *Keith*, 900 F.2d at 740.  "This approach, following from the contractual nature of consent judgments, dictates application of contract interpretation principles to determine the intent of the parties. If the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit, whether or not formally presented in the earlier action, is precluded. …Claim preclusion will not apply, however, if the parties intended to settle only one part of a single claim and intended to leave another part open for future litigation. *Id.*, at 740-41; *see Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 774 (4th Cir. 1991) (consent, in express

---

[10] In the event that this Court finds that the issue of the differences between the tricycles is relevant, Plaintiffs are entitled to discovery on that issue.  Defendants rely upon the Affidavits of Elie Baron and Thaddeus Fletcher to support their factual contention that, upon inspection, "there are no functional differences between the steering and turning systems of the two products." (Mem. Supp. Mot. to Dismiss, at 5.)  Moreover, Defendants rely upon the declaration of an expert apparently retained for this litigation.  Plaintiffs are entitled to discovery from Defendants on these issues and should be given the opportunity to retain their own expert on the question of whether there are functional differences between the two products.  Moreover, Plaintiffs are entitled to depose Thaddeus Fletcher and Elie Baron.  Their depositions are critical to the factual issues of whether there are functional, or instead merely cosmetic, differences between the Ofrat Model No. 129H/Little Tikes Model No. LT129 and Ofrat Model No. 1260100/Little Tikes Model No. 615221.  *See* Rule 56(f) Affidavit, <u>Exhibit 3</u>.

words or otherwise, to the splitting of the claim prevents the defendant from invoking claim preclusion); *Kronish*, 197 Fed. Appx. at 265-66.

In this case, the parties agreed to settle only the claims against Little Tikes as a trademark licensor with respect to the Ofrat Model No. 129H tricycle, imported by Rand. This much is evident from the email correspondence between the parties and the Consent Order entered in the Rand case. Little Tikes represented to the Plaintiffs that it was not involved in the manufacture, importation or sale of the infringing tricycles – it was only the trademark licensor. The parties agreed to dismiss Little Tikes with prejudice as to the Ofrat Model No. 129H tricycle based on this representation and the understanding of both that a cause of action for trademark infringement does not lie against a party who is only a trademark licensor and does not actually make, import or sell the infringing products. The parties left open for future litigation any claims against Little Tikes that might arise out of the manufacture, importation or sale of infringing tricycles by Little Tikes. Indeed, Little Tikes agreed not to plead the defense of laches in any future litigation between the parties. Under these circumstances, the Plaintiffs are not precluded from bringing the current claims, which allege that MGA manufactured, imported and sold an infringing tricycle.

The Fourth Circuit addressed a similar factual situation in *Kronish*. In that case, Kronish was employed by the debtor company prior to the filing of an involuntary bankruptcy petition. The Trustee sought the turnover of files related to the previous representation, but Kronish refused asserting a lien for attorneys' fees. Ultimately, the parties reached a settlement that awarded Kronish an administrative claim for the fees. The claim was later paid. Subsequently, the Trustee brought suit against Kronish alleging malpractice based on the services provided to the debtor pre-petition. Kronish moved to dismiss, claiming that the consent order was a final

order issued on the merits of the reasonableness and value of the legal services he provided. In rejecting this contention, the Fourth Circuit observed:

> By its terms, the Consent Order has a limited purpose: "The allowance of Kronish's administrative and unsecured claim resolve [sic] its asserted attorneys' lien on the files it holds from services performed on behalf of the Debtor. Kronish agrees to copy and turnover [sic] all documents requested by the Chapter 7 trustee in this matter." Likewise, the Application for Administrative Claim evinces that in entering the Consent Order, the parties focused solely on the turnover of the files in Kronish's possession . . . Thus, by the clear language of the Consent Order and Application for Administrative Claim, it is quite clear that the Consent Order was only intended to resolve the Trustee's right to access Kronish's files, documents, and records. The conspicuous absence of any mention or allusion to the quality of Kronish's legal services persuades us that the Consent Order was not intended to resolve that issue.

197 Fed. Appx. at 266.

Similarly, in this case, the Consent Order and the email correspondence leading up to its entry demonstrate that the parties intended not to resolve any claims or issues arising from Little Tikes' manufacture, sale or importation of infringing tricycles in general, but to resolve any issues or claims against Little Tikes based on its status as nothing more than a trademark licensor with respect to the Ofrat Model No. 129H tricycle. *Keith*, 900 F.2d at 741 (parties may settle only one part of a claim and leave another part open for future litigation). Quite clearly, the parties did not intend to resolve claims against Little Tikes or its parent, MGA, as a manufacturer, importer and distributor of infringing tricycles or with respect to any tricycles other than the specific model mentioned in the Consent Order. It defies logic for the Plaintiffs to agree to dismiss with prejudice any claims against Little Tike related to its, or its parent's, manufacture, importation or sale of infringing tricycles in general and Ofrat tricycles specifically when it was assured by Little Tikes that Little Tikes was not engaged in these activities.

Had Little Tikes revealed, at the time, that it was in fact manufacturing, importing and selling infringing Ofrat tricycles, the Plaintiffs never would have agreed to a dismissal with

prejudice. Having induced the dismissal in the Rand case based on its representations and an understanding between the parties that Little Tikes was merely a trademark licensor, Little Tikes cannot now be heard to complain that the Plaintiffs have filed suit against it for engaging in the very activities it previously denied it was engaged in. If settlement negotiations are to have any meaning or effect, Little Tikes simply cannot be permitted to employ this sort of "gotcha" litigation tactic. The fact remains that the parties agreed only to dismiss the Plaintiffs' claims against Little Tikes as a trademark licensor to Rand on the specific Ofrat Model No. 129H tricycle, and not any claims that might exist against Little Tikes and its parent company as manufacturers, importers and sellers of infringing Ofrat tricycles. *See Keith*, 900 F.2d at 740 (preclusion should denied with respect to claims not within the settlement agreement). Because the parties did not intend to settle these claims, the Plaintiffs are entitled to assert them in this case and they are not barred by the doctrine of *res judicata* from doing so.

### C. Plaintiffs did not Grant an Implied License to Defendants

Defendants contend that they have an "implied license by legal estoppel" to practice the '884 and '988 Patents. (Mem. Supp. Mot. to Dismiss, at 7.) However, Defendants seem to confuse the doctrine of implied license with the doctrine of legal estoppel. "Legal estoppel refers to a narrow category of conduct encompassing scenarios where a patentee *has licensed or assigned a right*, received consideration, and then sought to derogate from the right granted." *Wang Labs., Inc. v. Mitsubishi Elecs. America, Inc.*, 103 F.3d 1571, 1581 (Fed. Cir.1997) (emphasis added). Thus, in order for the doctrine of legal estoppel to apply at all in this case, KETTLER must have licensed or assigned a right to Little Tikes and MGA. Without the grant of a license, the doctrine of legal estoppel has no applicability. The cases cited by Defendants fall into two categories: (1) cases where there exists an explicit written license or covenant not to sue on particular patents; and (2) cases where a set of facts exists demonstrating the existence of

an implied-in-fact license. *See Transcore, LP v. Elec. Trans. Consultants Corp.*, 563 F.3d 1271, 1272 (Fed. Cir. 2009) (patent holder expressly and unconditionally covenanted not to bring an action against Mark IV for future infringement of a number of patents); *AMP Inc. v. United States*, 389 F.2d 448, 454 (Ct. Cl. 1968) (plaintiff granted the Government an irrevocable, nonexclusive, nontransferable license to practice certain named patents); *Wang Labs.*, 103 F.3d at 1579-1582 (discussing the difference between an implied in fact license and a license created by equitable estoppel).

Defendants do not seem to contend that KETTLER granted an express license to the Plaintiffs permitting them to practice the '408 and '772 Patents. Instead, they attempt to cobble the existence of an implied license from unspecified "statements and conduct," and the entry of the Consent Order dismissing Little Tikes from the Rand case with prejudice with respect to the Ofrat Model No. 129H tricycle. (Mem. Supp. Mot. to Dismiss, at 7.) As the alleged infringers, Defendants have the burden of establishing the existence of an implied license as an affirmative defense. *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986). According to *Wang Labs.*, an implied license will arise only when the patent holder, by words or conduct, creates the impression that it consents to another party making, using or selling its patented invention. 103 F.2d at 1579-80. Aside from the entry of the Consent Order, defendants fail to specify precisely what "statements and conduct" on the part of the Plaintiffs justify the finding of an implied license. At the very least, Plaintiffs are entitled to discovery to ascertain the nature of the statements and conduct that Plaintiffs allege created the impression that KETTLER consented to the Plaintiffs making, using or selling its patented invention. This Court cannot make a determination about the existence, or scope, of an implied license based only on the facts alleged in the Complaint. *See, e.g.*, *Aspex Eyeware, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006) (whether an agreement grants a license is a question of

intent); *Atkins v. Benson*, 331 F.3d 988, 992 (D.C. Cir. 2003) (record presents a material issue of fact whether parties intended a license); *Wang Labs.*, 103 F.3d at 1579 (factual findings must be made supporting the conclusion that an implied license exists); *Johnson v. Jones*, 885 F. Supp. 1008, 1014 (E.D. Mich. 1995) ("All of the circumstances surrounding the negotiations made between the parties must be considered to determine if and to what extent an implied license was granted.").

To the extent that Plaintiffs rely solely on the entry of the Consent Order, the language is insufficient by itself. All the Consent Order did was to consent to the dismissal with prejudice of Little Tikes with respect to the Ofrat Model No. 129H tricycle, a dismissal based on Little Tike's assurances that it did not manufacture, import or sell this tricycle or any other tricycles. (*See* Exhibit 1B ("Little Tikes does not make or sell or use or import anything, and they only license the name."); Exhibit 2 ("Little Tikes does not sell, manufacture or distribute any tricycles.")). As Defendants observe, "a license is a covenant by the patent owner not to sue the licensee for making, using or selling the patented invention." *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995). The problem with Defendants argument is that nothing in the Consent Order makes it clear precisely why the case was voluntarily dismissed. As the court in *Transcore* observed, "the question is what the TansCore-Mark IV settlement agreement authorizes." *Id.* at 1276 (where, in return for $4.5 million, party expressly agreed and covenanted in writing not to bring any demand, claim, lawsuit or action against Mark IV for future infringement, party authorized all acts that might constitute infringement including sale of infringing device).

In actual fact, a review of the statements and conduct of the parties in entering into the settlement that led to the entry of the Consent Order reveals that KETTLER did not grant a license to Little Tikes or MGA, nor did it authorize Little Tikes to do anything other than to

place its trademark on the Ofrat Model No. 129H tricycle.[11]  The elephant in the corner here is the fact that the Plaintiffs only agreed to dismiss Little Tikes with prejudice because Little Tikes claimed it was *not* making, importing or selling *any* tricycles and specifically the Ofrat Model No. 129H tricycle.  Accordingly, it defies logic to imply that the Plaintiffs, by dismissing the Rand case with prejudice against Little Tikes, intended to covenant not to sue Little Tikes for making, importing or selling the infringing tricycle.  Indeed, if as it claimed at the time, Little Tikes was not making, importing or selling any tricycles, and in particular the Ofrat-made tricycle, why would it need a license to do just that?

Contrary to the Defendants contentions, the facts involved here demonstrate only that the Plaintiffs agreed to dismiss Little Tikes from the Rand case because it could not maintain a patent infringement claim against a party who, according to assurances from its counsel, was only a trademark licensor.  Little Tikes is not entitled to sucker the Plaintiffs into a dismissal on one ground and then claim that, in fact, the parties' settlement agreement and dismissal was based on another ground all together.[12]  If Little Tikes had wanted a license or assignment it should have negotiated for one; certainly it should not have indicated that it did not need a license.  Because no implied license to practice the '408 and '722 Patents exists, the doctrine of legal estoppel is entirely irrelevant and does not apply.

> **D.**    **Even if an implied license exists, the Defendants cannot assert legal estoppel**

Even if the Consent Order and correspondence are sufficient to support a claim that KETTLER assigned or licensed a definable property right to Little Tikes, the relevant question is

---

[11] Surely, Defendants are not contending that any dismissal with prejudice, regardless of the reason or allegations in the Complaint, grants an implied license to the defendant.  Such an outcome would be an impermissible and unwarranted expansion of the doctrine of implied license and a trap for the unwary.

[12] If any party is estopped here, it is Little Tikes.  Having made representations to the Plaintiffs that it was not engaged in manufacturing, selling or distributing Ofrat tricycles, representations that were relied on by the Plaintiffs in changing their position and dismissing the action with prejudice, Little Tikes is estopped from now using that dismissal to imply a license to "continue manufacturing and selling" the infringing tricycle.

what was authorized by KETTLER. *Transcore*, 563 F.3d at 1276 (the question is what the settlement agreement authorizes); *AMP, Inc.*, 389 F.2d at 453 (it is necessary to define the property right granted to defendant by plaintiff and show how plaintiff is attempting to derogate from that right); *Edison Light, Power & Heat Co.*, 101 F. 831, 836 (6th Cir. 1990) (the extent of an implied license must depend on the particular facts of each case). Legal estoppel is imposed in order to ensure that the licensee retains the benefit of its bargain. *AMP, Inc.*, 389 F.2d at 452. As noted above, it defies common sense for the correspondence between the parties, coupled with the Consent Order, to be interpreted to license to Little Tikes a right to infringe the '408 and '772 Patents by making, importing and selling Ofrat-made tricycles when Little Tikes alleged that it was not, in fact, engaged in those activities. Thus, the only bargain Little Tikes struck with KETTLER was to keep its trademarked name on one tricycle. The Complaint filed in this case is based not on Little Tikes' conduct as a trademark licensor, but on Little Tikes' and MGA's conduct in making, importing and selling a different tricycle that infringes KETTLER's valid and enforceable intellectual property rights, including patents not included in the Rand Complaint. These allegations are not in derogation of what, if anything, was authorized by the settlement and Consent Order in the Rand case. *Id.* at 1581 (patentee must derogate from the right granted).

Moreover, the doctrine of legal estoppel requires that some consideration have changed hands in exchange for the allegedly granted license. In this case, there was no consideration. As the correspondence demonstrates, no money changed hands. *See AMP, Inc.*, 389 F.2d at 452 (property right must have been licensed for valuable consideration). Defendants' argument that the consideration was Little Tikes' dismissal of its counterclaims *without* prejudice is nonsensical and not supported by the facts. Instead, the facts demonstrate that the Plaintiffs

sought to dismiss the Rand Complaint once they determined that pursuing the litigation was not the best use of its resources.

Initially, Plaintiffs sought to dismiss Little Tikes without prejudice. (*See* <u>Exhibit 1C</u> (Email from John Lynch to Pennington)). It was only based on Little Tikes' assurances that it did not do anything other than license its trademark that Plaintiffs agreed to dismiss Little Tikes with prejudice. *Id.* The correspondence between the parties is devoid of any suggestion that Plaintiffs agreed to dismiss Little Tikes with prejudice in consideration for Little Tikes' dismissal of its counterclaims. Moreover, the counterclaims for noninfringement and patent invalidity were dismissed without prejudice to Little Tikes and Rand bringing them again. Little Tikes did not give up any legal right by dismissing its counterclaims without prejudice. As a result, the dismissal is hardly consideration that could be deemed "valuable." Because the alleged license is not supported by consideration, it cannot form the basis of legal estoppel.[13] Accordingly, the Defendants cannot make out a claim of legal estoppel and their Motion to Dismiss on this ground must be denied.

## IV.    CONCLUSION

This Court should reject the Plaintiffs attempts to turn the settlement and Consent Order entered in the Rand case into something they are not. The email correspondence between the parties makes it clear that the parties agreed to a dismissal of Little Tikes with prejudice with respect only to the Ofrat No. 129H tricycle. This dismissal was based on representations made by Little Tikes that it did not make, import or sell any tricycles at all, and any Ofrat-made

---

[13] In a letter emailed to counsel for Little Tikes on April 15, 2009, counsel for the Plaintiffs sets forth the parties' original agreement. Part of that agreement was that Little Tikes would not assert a defense of laches or estoppel in any subsequently filed suit. (Exhibit 4.) Counsel for Little Tikes made no objection to the letter or its contents. At the very least, Plaintiffs are entitled to prove the substance of the prior settlement agreement between the parties and that Little Tikes agreed to waive the very estoppel defense it now asserts.

products specifically, and could not, therefore, be liable for patent infringement.  Accordingly, the only claim settled by the parties in the Rand case was the Plaintiffs' claim against Little Tikes as a trademark licensor on the Ofrat No. 129H tricycle.  The parties left open for future litigation any claims the Plaintiffs might have against Little Tikes as a maker, importer and seller of infringing tricycles.  Accordingly, the Complaint filed in this case is not barred by *res judicata*.  At the very least, Plaintiffs are entitled to discovery on the issue of privity between Little Tikes and MGA and the relationship of those parties at the time of the facts alleged in the Rand Complaint.

Moreover, the resolution between the parties – based on Little Tikes' representations that it was not making, importing or selling any Ofrat-made tricycles and was not involved at all in the sale of the Rand-imported tricycles – cannot be distorted into a license to sell infringing Ofrat-made tricycles.  If Little Tikes' representations at the time were true, it did not need a license to make, sell or import infringing Ofrat-made tricycles.  As a result, Little Tikes could not have been led to believe that KETTLER consented to any such license.  If the representations were false, as it now appears they were, Little Tikes should not permitted to hide the true facts from Plaintiffs and, having obtained what it wanted, turn around and claim the existence of a license never contemplated by KETTLER.  In short, the Plaintiffs are not entitled to benefit from Little Tikes' deliberate misrepresentations and their attempt to distort the parties' true agreement should be rejected.   For the reasons set forth above, Plaintiffs respectfully request that this Court deny the Motion to Dismiss, order the Defendants to Answer the Complaint, schedule a

settlement conference, as set forth in the agreed Order entered by this Court on December 10, 2009, and grant such further relief as this Court deems proper and just.

Respectfully submitted,

HEINZ KETTLER GMBH & CO., KG and
KETTLER INTERNATIONAL, INC.

By:    /s/ John C. Lynch
                      Of Counsel

John C. Lynch, Esquire (VSB # 39267)
Ethan G. Ostroff, Esquire (VSB #71610)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23510
Telephone:  (757) 687-7765
Facsimile:  (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: ethan.ostroff@troutmansanders.com

Attorneys for Plaintiffs Heinz KETTLER GmbH & Co., KG.,
and KETTLER International Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of December, 2009, I electronically filed the foregoing document with the Clerk of the Court, using the CM-ECF system, which will send notification of such filing to the following CM-ECF participants:

**<u>Counsel for Defendants MGA Entertainment, Inc.</u>**
**<u>and The Little Tikes Company, Inc.</u>**
Edward A. Pennington
Sid V. Pandit
Hanify & King, PC
1055 Thomas Jefferson St. N.W., Suite 400
Washington, DC 20007
Telephone: (202) 403-2100
Facsimile: (202) 4294380
E-mail: eap@hanify.com
E-mail: svp@hanify.com

I hereby certify that on this 18th day of December, 2009, a true and correct copy of Plaintiffs' Memorandum in Opposition to Rule 12(b)(6) Motion to Dismiss was served via hand delivery to the following counsel of record:

**<u>Counsel for Defendants MGA Entertainment, Inc.</u>**
**<u>and The Little Tikes Company, Inc.</u>**
Edward A. Pennington
Sid V. Pandit
Hanify & King, PC
1055 Thomas Jefferson St. N.W., Suite 400
Washington, DC 20007
Telephone: (202) 403-2100
Facsimile: (202) 4294380
E-mail: eap@hanify.com

      /s/ John C. Lynch
John C. Lynch (VSB No. 39267)
Counsel for Plaintiffs
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-7510
E-mail: john.lynch@troutmansanders.com

393514v1